STATE of Wisconsin, Plaintiff-Respondent,

v.

William J. EVERS, Defendant-Appellant.†

Court of Appeals

*No. 90-1881-CR. Oral argument May 6, 1991.—Decided June 11, 1991.*

(Also reported in 472 N.W.2d 828.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief and oral argument of *Robert J. Lerner* of *Perry, Lerner & Quindel, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney gen-

eral, and *William L. Gansner,* assistant attorney general, and oral argument of *William L. Gansner.*

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. William Evers appeals his conviction on prostitution-related charges stemming from his control and operation of "massage parlors" in Outagamie, Brown and Winnebago Counties over a period of eight years, and an order denying postconviction relief. He claims three errors on appeal: First, that the three charges of engaging in a continuing criminal enterprise in violation of sec. 946.85, Stats., are multiplicitous; second, that imposition of consecutive sentences for continuing criminal enterprise offenses and predicate substantive offenses violates protections against double jeopardy; and third, that the trial court erred by denying his request for immunity for fewer than ten defense witnesses, while granting the prosecution's request for immunity for more than fifty state's witnesses.

We conclude first that sec. 946.85, Stats., by its reference to three activities prohibited under sec. 946.83 describes three distinct offenses under the Wisconsin Organized Crime Control Act (WOCCA) and that charging an individual with each of the three offenses is not multiplicitous. Second, we determine that double jeopardy does not preclude the imposition of consecutive sentences for violation of sec. 946.85 and the underlying predicate offenses. Finally, we conclude that the trial court did not err by refusing Evers' request to grant immunity to certain defense witnesses. The trial court's judgment and order are affirmed.

Count one of the information charged Evers with engaging in a continuing criminal enterprise by conducting or participating in an enterprise through a pattern of racketeering activity, in violation of sec. 946.85

and 946.83(3), Stats. In support of this charge, the jury was asked to consider seventy-two predicate offenses. It found that Evers committed fifty-seven of those offenses. Count two charged Evers with engaging in a continuing criminal enterprise by acquiring or maintaining an interest in or control of an enterprise or real property, in violation of sec. 946.85 and 946.83(2). The jury was asked to consider sixty-eight predicate offenses and found that he committed fifty. Count three charged Evers with engaging in a continuing criminal enterprise by using or investing the proceeds of an enterprise, in violation of sec. 946.85 and 946.83(1). The jury was asked to consider forty-one predicate offenses and found that he committed twenty-four. Many of the same predicate offenses were used to support each charge.

## WISCONSIN ORGANIZED CRIME CONTROL ACT

Section 946.85, Stats., provides:

Continuing criminal enterprise. (1) Any person who engages in a continuing criminal enterprise shall be imprisoned not less than 10 years nor more than 20 years, and fined not more than $10,000 or as provided in s. 946.84(2). If the court imposes a sentence less than the presumptive minimum sentence, it shall place its reasons for doing so on the record.

(2) In this section a person is considered to be engaged in a continuing criminal enterprise, if he or she engages in a prohibited activity under s. 946.83, and:

(a) The activity is undertaken by the person in concert with 5 or more other persons, each of whom acted with intent to commit a crime and with respect to whom the person occupies a supervisory position; and

(b) The person obtains gross income or resources in excess of $25,000 from the activity.

Section 946.83 delineates three prohibited activities:

(1) No person who has received any proceeds with knowledge that they were derived, directly or indirectly, from a pattern of racketeering activity[1] may use or invest, whether directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2) No person, through a pattern of racketeering activity, may acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity.

██ WOCCA is patterned on the federal Racketeer Influenced and Corrupt Organizations (RICO) Act. RICO prohibits three activities in 18 U.S.C. § 1962(a) through (c) that are similar to the prohibitions in sec.

---

[1]A "pattern of racketeering activity" is defined in sec. 946.82(3) as

engaging in at least 3 incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, provided at least one of the incidents occurred after April 27, 1982 and that the last of the incidents occurred within 7 years after the first incident of racketeering activity. Acts occurring at the same time and place which may form the basis for crimes punishable under more than one statutory provision may count for only one incident of racketeering activity.

946.83, Stats.[2] The federal RICO prohibitions read as follows:

*Prohibited activities.*

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more of the directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

[2]In addition to statutory subsections that correspond to the three offenses specified under WOCCA, the federal Act also includes subsec. (d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Because WOCCA was patterned after RICO, we have held that federal case law interpreting RICO is persuasive authority in our interpretation of WOCCA. *State v. Judd,* 147 Wis. 2d 398, 403, 433 N.W.2d 260, 262–63 (Ct. App. 1988).

## MULTIPLICITY OF CHARGES

Evers first contends that the state is barred from charging him with three separate offenses under sec. 946.85 and 946.83, Stats. Whether sec. 946.85 and the three subsections of sec. 946.83 actually describe different offenses is a question of law that we review de novo. *See generally State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983). Statutory offenses must be examined to ascertain "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932); *see also Gordon,* 111 Wis. 2d at 138–39, 330 N.W.2d at 566 (Wisconsin applies *Blockburger* as the "additional element" or "additional fact" test).

The language of sec. 946.85, Stats., is clear and unambiguous. A person engages in a continuing criminal enterprise when the conditions described in subsec. (2)(a) and (2)(b) are present *and* the individual engages in an activity prohibited under sec. 946.83. Section 946.83 describes three distinct prohibited activities:

Using or investing proceeds of the racketeering activity, acquiring an interest in property or an enterprise and conducting or participating in the enterprise. We conclude that there are three separate and distinct offenses chargeable under sec. 946.85, each requiring proof of a fact the others do not.

Our ruling is consonant with all of the federal circuits interpreting RICO. The ninth circuit has described the prohibitions of 18 U.S.C. § 1962 as barring "the investment of racketeering moneys, the acquisition of property through a pattern of racketeering activity [and] the conduct of an enterprise through a pattern of racketeering." *United States v. Rone,* 598 F.2d 564, 568 (9th Cir. 1979), *cert. denied,* 445 U.S. 946 (1980). Because each of the four subsections of 18 U.S.C. § 1962 defines separate offenses, the federal courts have invoked the presumption that the legislature intended cumulative punishments for them. *See United States v. Pungitore,* 910 F.2d 1084, 1117 (3d Cir. 1990) (permitting convictions of both substantive and conspiracy violations under § 1962(c) and (d)); *United States v. West,* 877 F.2d 281, 292 (4th Cir.), *cert. denied,* 110 S.Ct. 377 (1989) (permitting convictions of both substantive and conspiracy violations under § 1962(c) and (d)); *United States v. Yarbrough,* 852 F.2d 1522, 1545 (9th Cir.), *cert. denied,* 109 S.Ct. 171 (1988) (permitting convictions of both substantive and conspiracy violations under § 1962(c) and (d)); *United States v. Biasucci,* 786 F.2d 504, 515–16 (7th Cir.), *cert. denied,* 479 U.S. 827 (1986) (permitting conviction on two counts of substantive violations, § 1962(b) and (c), even where "convictions arise from the same acts or transactions"); *United States v. Watchmaker,* 761 F.2d 1459, 1477 (11th Cir. 1985), *cert. denied,* 474 U.S. 1100 (1986) (permitting convictions of

both conspiracy and substantive violations in § 1962(c) and (d)).

The third circuit in *Pungitore,* 910 F.2d at 1117 n.41, states that the only circuit that has held to the contrary is the sixth circuit in *United States v. Sutton,* 642 F.2d 1001 (6th Cir. 1980), *cert. denied,* 453 U.S. 912 (1981). In *Sutton,* however, the sixth circuit stated:

> It is apparent to us that §§ 1962(c) and 1962(d) under the *holdings of the Supreme Court* in *Iannelli v. United States . . . validate the indictment of these appellants under both sections.* Nevertheless, we hold that the proofs in this record showing these defendants violated § 1962(c) and § 1962(d) were identical. Under these circumstances, we believe that the conspiracy convictions under § 1962(d) merge with the § 1962(c) convictions for purposes of sentence.

*Id.* at 1040 (emphasis added).[3] We read *Sutton* as consonant with the general rule adopted by the other circuits. Absent identical proofs of violation, a defendant can be indicted under more than one RICO subsection.

Evers argues that the five-factor test of *United States v. Ruggiero,* 754 F.2d 927, 932 (11th Cir. 1985), should be applied to determine whether multiple RICO counts were appropriate. As the state points out, however, *Ruggiero* addresses a fact situation where the prosecutor has charged a number of RICO violations under the same statutory subsection; it aids a court in determining whether one or several "patterns of racketeering activity" exist. For that reason, *Ruggiero* does not apply here.

---

[3]The United States Supreme Court in *Iannelli v. United States,* 420 U.S. 770 (1975), approved the imposition of punishments for both conspiracy and the substantive offense under the Organized Crime Control Act of 1970, 18 U.S.C. § 1955.

■

We note that the overlap in predicate offenses supporting each charge does not compel a different conclusion. A pattern of racketeering activity is established by only three incidents of racketeering activity. Section 946.82(3), Stats. A single transaction may give rise to liability for distinct offenses under separate statutes without violating double jeopardy principles. *See Biasucci,* 786 F.2d at 515.

## SENTENCING FOR BOTH CONTINUING CRIMINAL ENTERPRISE VIOLATIONS AND UNDERLYING PREDICATE OFFENSES

■

Evers' second contention is that imposition of consecutive sentences for continuing criminal enterprise offenses and predicate substantive offenses violates protections against double jeopardy. To determine whether Evers was denied constitutional protections against multiple punishments for the same offense, we examine the legislative intent to determine the allowable unit of prosecution. *See State v. Tappa,* 127 Wis. 2d 155, 164, 378 N.W.2d 883, 887 (1985).

WOCCA itself contains strong evidence of the legislature's intent with respect to the allowable unit of prosecution under the Act. It provides: "The application of one civil or criminal remedy under ss. 946.80 to 946.88 does not preclude the application of any other remedy, civil or criminal, under ss. 946.80 to 946.88 or any other provision of law." Section 946.88(2), Stats. We conclude that the legislature intended to allow prosecution for both the continuing criminal enterprise offenses under sec. 946.85 and the underlying predicate offenses.

Again, our holding corresponds to the unanimous rule of the federal courts interpreting RICO. *See, e.g.,*

735

*United States v. Kragness,* 830 F.2d 842, 863-64 (8th Cir. 1987); *United States v. Grayson,* 795 F.2d 278 (3rd Cir. 1986), *cert. denied,* 481 U.S. 1018 (1987); *United States v. Hampton,* 786 F.2d 977 (10th Cir. 1986); *United States v. Greenleaf,* 692 F.2d 182 (1st Cir. 1982), *cert. denied,* 460 U.S. 1069 (1983); *United States v. Hawkins,* 658 F.2d 279, 287-88 (5th Cir. 1981); and *United States v. Solano,* 605 F.2d 1141 (9th Cir. 1979), *cert. denied,* 444 U.S. 1020 (1980).

Although the United States Supreme Court has not taken any of these cases on certiorari, it addressed the constitutionality of this type of prosecution under a different federal act, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848, in *Garrett v. United States,* 471 U.S. 773 (1985). The *Garrett* Court ruled that the legislative history of the Act demonstrated that Congress intended to allow prosecution for both predicate offenses and the continuing criminal enterprise offenses. *Id.* at 785-86. Applying the same principles, we conclude that prosecution of continuing criminal enterprise violations and the predicate offenses does not violate constitutional protections against double jeopardy.

## REFUSAL TO GRANT IMMUNITY TO DEFENSE WITNESSES

Evers' third contention is that the trial court violated his rights to present evidence and to due process of law by denying his request for immunity for fewer than ten defense witnesses, while granting the prosecution's request for immunity for more than fifty state witnesses. Evers argues that in at least one instance, had the court granted his request for immunity for his wife, she would

736

have testified that Evers had not exercised supervision and control over a particular operation. Counsel conceded at oral argument, however, that the record does not disclose any attempt to alert the trial court to the exact nature of the testimony Mrs. Evers would have contributed were she granted immunity. Without such an offer of proof to the trial court, Evers cannot now claim prejudice stemming from the court's refusal to grant his wife immunity. *See* sec. 805.18(2), Stats.

The state, through the district attorney, has a vital concern in controlling the use of the extraordinary device of a grant of immunity. *Peters v. State,* 70 Wis. 2d 22, 40, 233 N.W.2d 420, 429 (1975). The one-sided power of a district attorney to request immunity for a witness does not violate a defendant's due process rights. *Sanders v. State,* 69 Wis. 2d 242, 261-62, 230 N.W.2d 845, 856 (1975).

Evers reminds us that the supreme court has stated that the prosecutor should bear in mind the predominant objective of impartial justice in making immunity decisions, and he or she should not hesitate to move for immunity solely on the ground that the testimony thus elicited might exonerate the defendant, *see Peters,* 70 Wis. 2d at 41, 233 N.W.2d at 430. While this statement is true, it omits discussion of the showing required to obtain judicial review of a prosecutor's immunization decision. To demonstrate an abuse of prosecutorial discretion, a defendant must make a substantial evidentiary showing that the government intended to distort the judicial fact-finding process. *See Stuart v. Gagnon,* 614 F. Supp. 247 (E.D. Wis. 1985).

Clearly, a more substantial showing is required than a general statement, unsupported by any record citation, that had Mrs. Evers testified, "there would have been corroborating testimony to the testimony of Mr. Evers as to the issue of supervision and control of the alleged racketeering enterprise." Consequently, Evers has not demonstrated an intention to distort the judicial fact-finding process. Evers was denied neither his right to present evidence nor his right to due process of law.

*By the Court.*—Judgment and order affirmed.