570 So.2d 952 (1990)
The STATE of Florida, Appellant,
v.
Dean Kevin LUCAS, Martin Geller, Leslee Schwinger Geller, Daniel Patrick Lynch, Appellees.
No. 88-1820.
District Court of Appeal of Florida, Third District.
April 10, 1990.
On Motion for Rehearing December 4, 1990.
*953 Robert A. Butterworth, Atty. Gen., Michael J. Neimand, Michele L. Crawford and Michael Lieman, Asst. Attys. Gen., Janet Reno, State Atty., Richard L. Shiffrin and Russell R. Killinger, III, Asst. State Attys., for appellant.
Bennett H. Brummer, Public Defender, Valerie Jones, Thomas G. Murray, Asst. Public Defenders, Bronis & Portela and Stephen J. Bronis, Miami, Dennis Urbano, Paul Morris, for appellees.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
HUBBART, Judge.
This is an appeal by the State of Florida from a trial court order dismissing two counts of an indictment charging four defendants with violation and conspiracy to violate the Florida RICO Act. Because the information fails to allege an essential element of the charged RICO Act violations, namely, "a pattern of criminal activity" due to the lack of continuity in the racketeering conduct alleged, we affirm the trial court's dismissal of the RICO charges.

I
On January 22, 1988, the state attorney filed an information which charged the defendants Dean Kevin Lucas, Martin Geller, Leslee Schwinger Geller, and Daniel Lynch in two counts[1] with: (1) violation of the Florida RICO (Racketeer Influenced and Corrupt Organization) Act [§ 895.03(3), Fla. Stat. (1985)], and (2) conspiracy to violate the Florida RICO Act [§ 895.03(4), Fla. Stat. (1985)]. Specifically, it was alleged that (1) federal and state law enforcement authorities closed down a "boiler room" operation called Wellington Precious Metals for fraudulently taking money from would-be investors in precious metals; (2) the defendants, former Wellington agents, thereafter associated themselves under the name D & R Associates or SMR Investigating Services to further defraud former Wellington clients; (3) the defendants, through the aforesaid association, obtained and used former Wellington client lists to solicit investments by telephone from former Wellington clients in nonexistent precious metals, causing individual losses totalling over $50,000; (4) the defendants also misrepresented themselves as agents of the Florida Attorney General's Office and misled former Wellington clients into believing that the defendants would assist them in getting back the latter's defrauded investment funds from a settlement obtained in a pending civil litigation against Wellington, or that Wellington metals had been seized and would be distributed to the clients; (5) this scheme to defraud involved seventeen former Wellington clients and continued for a period of six months from October 1, 1985 to March 31, 1986; and (6) the defendants committed numerous specific acts of alleged racketeering conduct in *954 furtherance of the aforesaid scheme to defraud.
The defendants moved to dismiss the two RICO counts in the information on the ground that these counts failed to allege "a pattern of racketeering activity," an essential element of the charged RICO violations. The trial court agreed and dismissed the two RICO counts. This appeal follows.

II
Section 895.03, Florida Statutes (1985), the RICO statute which the defendants were charged with violating, provides in relevant part:
"(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsections (1), (2), or (3)."
Section 895.02(3), Florida Statutes (1985), in turn, defines "enterprise" to mean, inter alia, "any ... group of individuals associated in fact although not a legal entity," and Section 895.02(4), Florida Statutes (1985) defines "pattern of racketeering activity" as:
"engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct."
"Racketeering activity" is further defined by Section 895.02(1), Florida Statutes (1985), to include any crime chargeable by indictment or information under various statutory provisions encompassing, as here, security act violations and grand theft.
The Florida Supreme Court in Bowden v. State, 402 So.2d 1173 (Fla. 1981), has interpreted the "pattern of racketeering activity" element of RICO Act crimes as follows:
"This definition of `pattern of racketeering activity' suggests that the similarity and interrelatedness of racketeering activities should be stressed in determining whether a `pattern of racketeering activity' exists. As used in this statute, the word `pattern' clearly requires more than accidental or unrelated instances of proscribed behavior. We construe the `pattern' element to require, in addition to similarity and interrelatedness of racketeering activities, proof that a continuity of particular criminal activity exists. A similar construction was given to `pattern' in the case of United States v. Stofsky, 409 F. Supp. 609, 614 (S.D.N.Y. 1973), which was cited in United States v. Ladmer, 429 F. Supp. 1231, 1244 (E.D.N.Y. 1977)."
Id. at 1174 (emphasis added).
The United States Supreme Court in H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), has further held that to prove a "pattern of racketeering activity" under the federal RICO Act, from which the Florida RICO Act was derived, Moorehead v. State, 383 So.2d 629, 630 (Fla. 1980), "a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." 492 U.S. at ___, 109 S.Ct. at 2900, 106 L.Ed.2d at 208 (emphasis added). As to the continuity prong of this holding, the Court stated:
"`Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition... . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement... . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether *955 the threat of continuity is demonstrated.
Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case... . A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. .. . In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business... .[,] a long-term association that exists for criminal purposes... .[,] or a regular way of conducting ... [an] ongoing legitimate business... ."
492 U.S. at ___, 109 S.Ct. at 2902, 106 L.Ed.2d at 209-10 (citations omitted).

III
Turning to the instant case, we have no difficulty in concluding that Counts I and II of the information charging the defendants with RICO violations were properly dismissed by the trial court because they fail to allege "a pattern of racketeering activity," an essential element of the charged crimes, due to the lack of continuity in the racketeering conduct alleged; all the predicate racketeering acts alleged in the information span only a brief period of six months and threaten no future long-term racketeering conduct. Indeed, the six-month fraudulent scheme alleged was aimed solely at a discrete set of victims, namely, former Wellington Precious Metals' clients derived from Wellington client lists, and was not directed at the public at large; obviously, such a scheme poses no threat of long-term existence as it necessarily must terminate when the Wellington client lists are exhausted. Stated differently, the alleged fraudulent scheme had but a limited fraudulent purpose directed at a limited set of victims covering only a short-term operation with no reasonable possibility of continuous existence. This being so, this short-run fraudulent scheme utterly fails to satisfy the continuity prong of the "pattern of racketeering activity" element to the charged RICO offenses. Based on remarkably similar circumstances, the Fourth Circuit has reached the same result in Menasco, Inc. v. Wasserman, 886 F.2d 681 (4th Cir.1989) (complaint alleging one-year fraudulent scheme aimed at a single set of victims held insufficient to state a RICO violation due to the lack of continuous racketeering conduct).
Affirmed.

ON MOTION FOR REHEARING
PER CURIAM.
The court has given careful consideration to the appellant-state's position that the element of "continuity," as required by H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), was, contrary to our ruling, at least susceptible to being established under the allegations of the RICO count of the information. Nevertheless, we adhere to the conclusion that it was not, see Tinwood N.V. v. Sun Banks, Inc., 570 So.2d 955 (Fla. 5th DCA 1990) (adopting and following our opinion in this case), and therefore deny rehearing.
We do certify to the supreme court that this decision involves a question of great public importance as to the applicability and scope of the continuity requirement in a RICO prosecution.
NOTES
[1] In fifty-five additional counts, the information also charged the defendants with various criminal offenses distinct from the RICO charges, including organized fraud, grand theft, fraudulent sale of security investments, and unlawful operation of boiler rooms.