600 So.2d 1093 (1992)
STATE of Florida, Petitioner,
v.
Dean Kevin LUCAS, et al., Respondents.
No. 77182.
Supreme Court of Florida.
April 16, 1992.
Rehearing Denied July 13, 1992.
Robert A. Butterworth, Atty. Gen., Tallahassee, Janet Reno, State Atty., and Richard L. Shiffrin and Russell R. Killinger, Asst. State Attys., Miami, for petitioner.
Gary D. Weiner of Kauffman & Schwartz, P.A., Boca Raton, Stephen J. Bronis of Stephen J. Bronis, P.A., Miami, and Paul Morris of the Law Offices of Paul Morris, P.A., Coral Gables, for respondents.
GRIMES, Justice.
We review State v. Lucas, 570 So.2d 952 (Fla. 3d DCA 1990), in which the court certified that the decision involved a question of great public importance as to the applicability and scope of the continuity requirement in a prosecution under the Florida Racketeer Influenced and Corrupt Organization Act (RICO).[*] We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
The State filed a multicount information against the respondents which included one count charging them with violation of the Florida RICO Act and one count charging them with conspiracy to violate the Florida RICO Act. The RICO counts alleged that (1) law enforcement authorities closed down a "boiler room" operation called Wellington Precious Metals that was fraudulently obtaining money from would-be investors in precious metals; (2) respondents, who were former Wellington agents, had associated themselves to further defraud Wellington clients by using former Wellington client lists to solicit investments in nonexistent precious metals; (3) respondents also misrepresented themselves as agents of the Florida Attorney General's Office so as to mislead the former Wellington clients into believing that respondents would assist them in obtaining the return of their previously defrauded funds; and (4) this scheme to defraud caused individual losses totalling more than $50,000 to seventeen former Wellington clients and continued from October 1, 1985, to March 31, 1986. Upon motion by the respondents, the trial court dismissed the RICO counts. The district court of appeal affirmed on the premise that the information failed to allege "a pattern of racketeering activity" because of the lack of continuity in the alleged racketeering conduct.
*1094 Section 895.03, Florida Statutes (1985), under which the respondents were charged, states in pertinent part:
(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsections (1), (2), or (3).
The term "enterprise" is defined to include "any ... group of individuals associated in fact although not a legal entity." § 895.02(3), Fla. Stat. (1985). "Racketeering activity" is defined to include any crime chargeable by indictment or information under specifically enumerated criminal statutes, including those encompassed under the subject information. § 895.02(1). Finally, "pattern of racketeering activity" is defined as
engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.
§ 895.02(4).
In Bowden v. State, 402 So.2d 1173, 1174 (Fla. 1981), this Court addressed the definition of "pattern of racketeering activity" by stating:
[The statutory] definition of "pattern of racketeering activity" suggests that the similarity and interrelatedness of racketeering activities should be stressed in determining whether a "pattern of racketeering activity" exists. As used in this statute, the word "pattern" clearly requires more than accidental or unrelated instances of proscribed behavior. We construe the "pattern" element to require, in addition to similarity and interrelatedness of racketeering activities, proof that a continuity of particular criminal activity exists.
The issue before us is whether the subject information contained sufficient allegations of continuity.
Pointing out that the Florida RICO Act was derived from the Federal RICO Act, the district court of appeal relied heavily upon the recent discussion of continuity by the United States Supreme Court in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 241-43, 109 S.Ct. 2893, 2901-02, 106 L.Ed.2d 195 (1989). In that case, the Court stated:
"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition... . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement... . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.
Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case... . A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. .. . In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business ...[,] a long-term association that exists for criminal purposes ... [, or] a regular way of conducting ... [an] ongoing legitimate business... .
(Citations omitted.)
While the district court of appeal concluded that the allegations of the subject information did not measure up to these *1095 requirements, we respectfully disagree. At the outset, we are not convinced that a series of related fraudulent activities which occur over a six-month period cannot demonstrate the requisite closed-end continuity. In any event, we believe the information sufficiently alleges the threat of continued criminal activity necessary to demonstrate open-ended continuity.
The recent case of United States v. Busacca, 936 F.2d 232 (6th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 595, 112 S.Ct. 595 (1991), discussed what is necessary to show the threat of continued criminal activity in a RICO prosecution. Busacca, the president of a local union and chairman of the board of trustees of its health and welfare fund and its pension fund, was charged under the Federal RICO Act with various criminal offenses, including embezzling monies from the local funds, accepting kickbacks to influence the operation of the funds, and making false statements on documents relating to the funds. The predicate acts consisted of misappropriating six checks from the funds over a two and one-half month period of time. Thus, it was necessary for the court to address whether there was a sufficient threat of continued criminal activity so as to sustain a RICO conviction for an open-ended period of continuity:
In this regard, Busacca argues that the predicate acts were finite in nature, i.e. they necessarily came to an end once the jury returned a verdict of guilty, his legal representation terminated, and he was removed from the Board of Trustees, and after which time he would be further required to repay the amounts advanced. This argument is without merit. An analysis of the threat of continuity cannot be made solely from hindsight. All racketeering activity must necessarily come to an end sometime. The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict.
Rather, in the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred. Here, there was nothing to stop Busacca from continuing to misappropriate monies from the Funds had he been acquitted of the charges in Busacca I. Busacca had demonstrated his complete ability to control the dispensation of monies from the Funds while doggedly pursuing and establishing his scheme to have his legal fees paid by the Funds. This ability, undiminished by his removal from the Funds as trustee, forms an implicit threat of continuity... . Thus, based upon the totality of the circumstances presented here, we find implicit in Busacca's actions a threat of continuity sufficient to establish a pattern of racketeering activity under RICO.
Id. at 238.
The subject information contains allegations of threats of continuing criminal activity more compelling than Busacca. Respondents had already defrauded seventeen former Wellington clients, and there was nothing to keep them from continuing to defraud other former Wellington clients. The nature of the operation implicitly suggests the threat of continued criminal activity.
Furthermore, it must be remembered that the United States Supreme Court in H.J. Inc. pointed out that the threat of continued criminal activity could also be proven by showing the predicate acts to be part of an ongoing entity's regular way of doing business. See Ochs v. Shearson Lehman Hutton, Inc., 768 F. Supp. 418 (S.D.N.Y. 1991). According to the information, the defrauding of former Wellington clients was the business in which the respondents had associated themselves. Thus, the threat of continued criminal activity has clearly been shown under the second prong of the H.J. Inc. analysis.
We recognize that the Florida definition of "pattern of racketeering activity" refers to engaging in at least two "incidents" of racketeering conduct rather than "acts" of racketeering conduct as set forth in the federal act. Thus, it has been held that unlike cases brought under the federal act, crimes committed at the same time cannot *1096 qualify as separate incidents for purposes of proving racketeering conduct under the Florida act. State v. Russo, 493 So.2d 504 (Fla. 4th DCA 1986), review denied, 504 So.2d 768 (Fla. 1987). However, in this case the seventeen allegations of fraudulent activity were directed toward different persons, and there is no suggestion that they occurred at the same time. We hold that the conduct alleged in the subject information demonstrates a continuity of criminal activity so as to meet the definition of "pattern of racketeering activity" under the Florida RICO Act.
We quash the decision below and remand for further proceedings. To the extent that it is inconsistent with our opinion, we also disapprove of Tinwood N.V. v. Sun Banks, Inc., 570 So.2d 955 (Fla. 5th DCA 1990), which relied on the opinion below.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and HARDING, JJ., concur.
KOGAN, J., dissents with an opinion.
KOGAN, Justice, dissenting.
I respectively dissent and would approve the well-reasoned opinion of the district court below, with which I totally agree.
NOTES
[*] Ch. 895, Fla. Stat. (1985).